643 A.2d 1120

Roger KLEIN, Helen Klein, Stuart C. Gaul, Joan B. Gaul, J. Murray Egan, Gayle C. Kirkwood, John M. Kirkwood, Richard F. Andracki, David W. Greve, Neil F. Jones, Susan Stauffer, Charles A. Scudder and Judith A. Stewart, Appellants,

v.

SHADYSIDE HEALTH, EDUCATION AND RESEARCH CORPORATION and the City of Pittsburgh.

Commonwealth Court of Pennsylvania.

Argued March 2, 1994.

Decided June 6, 1994.

---

Richard L. Rosenzweig, for appellants.

William R. Sittig, Jr., for appellee Shadyside Health, Educ. and Research Corp.

George R. Specter, for appellee City of Pittsburgh.

Before CRAIG, President Judge, and COLINS, FRIEDMAN, KELLEY and NEWMAN, JJ.

CRAIG, President Judge.

## INTRODUCTION

In this action in equity with an ancillary claim for declaratory judgment—related to a statutory zoning appeal by *Klein v. Council of the City of Pittsburgh,* 164 Pa.Commonwealth Ct. 521, 643 A.2d 1107 (1994) (*Klein II*)—owners (objectors) of residential property located in the vicinity of Shadyside Hospital, in the City of Pittsburgh, have appealed from an order of October 8, 1992, by Judge McLean, of the Court of Common Pleas of Allegheny County, in which the judge sustained defendants' preliminary objections, as filed by the City of Pittsburgh and the hospital's corporate body, and dismissed the equity action on the ground that the statutory zoning appeal procedure provides the exclusive remedy available to the objectors.

The objectors had in fact earlier filed a statutory zoning appeal with the common pleas court, on July 19, 1991, appealing from an action of the Pittsburgh City Council which gave zoning approval to a conditional use sought by the hospital to authorize its existing "hospital and unit group building" conditional use in an R–5 Multiple–Family Residential District to be augmented by a "helicopter medical private use landing area for a helistop" (medical helistop), pursuant to Pittsburgh's Zoning Code (Code).

On April 24, 1992, the objectors filed their complaint in the equity proceeding to which this opinion relates, requesting, in three counts, the following relief:

Count I—an injunction barring the City of Pittsburgh from issuing any building permits to the hospital for the proposed medical helistop pursuant to the conditional use zoning approval of July 9, 1991;

Count II—an injunction restraining the hospital from constructing that medical helistop at the hospital location; and

Count III—ancillary declaratory relief holding the city's zoning amendment relating to helicopter facilities, Ordinance No. 40 of 1990, to be invalid as special permissive legislation.

The objectors' equity complaint avers that the objectors do *not* have an adequate remedy at law by way of the statutory appeal previously filed by them. The equity complaint's averments under Count I relate to the zoning amendment, Ordinance No. 40 of 1990, and the objectors' claims directed to establishing its invalidity. In connection with that count, paragraph 28 avers that Ordinance No. 40 is "a combination of zoning ordinance and operational regulation with regard to helicopter landing facilities." Paragraph 32 describes the same amendment as "an example of an inextricable combination of operational regulations and zoning regulations subject to challenge as special discriminatory legislation."

Count II presents averments that the helistop would create a nuisance, resulting in irreparable harm to objectors' property, comfort and well-being.

The averments as to Count III of the complaint state that the amending ordinance is special legislation, illegal, discriminatory and invalid, an aberration from the city's zoning scheme, enacted in error, without realization by city council or the mayor as to its intentionally deceptive and special legislation character.

Pursuant to preliminary objections filed by the city and the hospital to the equity complaint, the trial judge, noting that equitable relief cannot be granted where there is an adequate

remedy at law, sustained the preliminary objections and dismissed the equity action on the ground that the remedies sought in it were "already being actively pursued" in the pending statutory appeal.

## ISSUE

The issue, as stated by the objectors, is as follows:

Did the trial court have subject matter jurisdiction in an equity and declaratory judgment proceeding to decide ordinance validity questions involving both operational provisions and zoning provisions, without the objectors first exhausting the statutory zoning appeal remedy for the invalidation of the zoning provisions?

As will be seen, before reaching that precise issue, this court must first decide if this case indeed involves *operational* ordinance provisions in addition to, and distinct from, *zoning* ordinance provisions.

More specifically, a decision as to whether or not this litigation is viable in an equity proceeding depends on whether it involves operational regulations so inextricably intertwined with zoning regulations that a statutory zoning appeal proceeding is inadequate for resolution of the case.

### Township of Plymouth Case Rule

To support equity jurisdiction, objectors rely upon this court's decision in *Township of Plymouth v. County of Montgomery,* 109 Pa.Commonwealth Ct. 200, 531 A.2d 49 (1987). There, this court's opinion stated that "zoning provisions—which the township has inextricably connected with the operational regulations—are, and should be, also cognizable in the same jurisdiction [equity] for adjudication."

This court supported that proposition by stating:

When the public welfare calls for the simultaneous adjudication of zoning provisions along with other matters, as where ordinance provisions and public contracts and projects are interrelated as in this case, the administrative process is not adequate and equity jurisdiction is appropriate to achieve a

prompt and unified resolution. *Duquesne Light Co. v. Upper St. Clair Township,* 377 Pa. 323, 105 A.2d 287 (1954) (zoning questions affecting transmission line construction project, cognizable in equity). Also pertinent is *Gladwyne, Inc. v. Township of Lower Merion,* 409 Pa. 441, 187 A.2d 549 (1963) (zoning issues, related to developer's agreement with township, cognizable in equity). The exhaustion of administrative remedies is not warranted when that process would be unfeasible. *Borough of Green Tree v. Board of Property Assessment,* 459 Pa. 268, 328 A.2d 819 (1974).

109 Pa.Commonwealth Ct. at 209, 531 A.2d at 53, 54. *Plymouth* involved an equity action testing the validity of a series of ordinances enacted by Plymouth Township to forbid Montgomery County from placing and operating a trash-to-steam refuse disposal plant within the township. The county, by counterclaim, sought to have the trial court invalidate the ordinances.

According to the history of that case, after Montgomery County proposed a 1200–ton–per–day plant of that sort, the township amended its zoning ordinances to establish a resource recovery district allowing such a plant. But community opposition developed in the township, and the township repealed that zoning amendment two weeks later. Three months thereafter, the township enacted the ordinances which became the subject of litigation.

One ordinance was a Solid Waste Management Ordinance— entirely separate from the township's zoning ordinance— which regulated the processing and disposal of waste by requiring permits and user fees per ton for waste processed, by regulating the disposal of waste at the facility and the transportation of waste with respect to details of route, vector control, vehicle size and emergency contingency plans.

Next there was a zoning ordinance amendment allowing a refuse disposal plant only by conditional use approval of the township council, with height and bulk limited. A companion zoning amendment described the resource recovery district of some thirty-six acres.

Also involved, in addition to some subdivision and land development regulations, were a township ordinance section subjecting the proposed facility to air pollution control approval, and another section requiring a permit for connection of the refuse disposal facility to the sewer authority's line.

Although the township had initiated the litigation, it raised the question of the court's jurisdiction to embrace the ordinance validity issues presented by the county's counterclaim.

A key conclusion in *Plymouth* was our affirmance of the trial court's decision that the operational regulations were invalid as preempted by the Solid Waste Management Act of July 7, 1980, P.L. 380, §§ 101–1003, 35 P.S. §§ 6018.101–6018.1003.

In *Plymouth*, we noted that this court in *Municipality of Monroeville v. Chambers Development Corp.*, 88 Pa.Commonwealth Ct. 603, 491 A.2d 307 (1985), had made clear that "the regulation of waste disposal operations 'presents an issue which is qualitatively different from the question of regulating the physical location of a proposed landfill.' " *Township of Plymouth*, 109 Pa.Commonwealth Ct. at 208, 531 A.2d at 53.

Following *Plymouth* was our more recent decision in *Pennsylvania Coal Co. v. Conemaugh Township*, 149 Pa.Commonwealth Ct. 22, 612 A.2d 1090 (1992). There this court upheld the use of a declaratory judgment action, without resort to a zoning hearing board proceeding, to test the validity of extensive surface mining provisions which Conemaugh Township had enacted nominally as part of its zoning ordinance. The surface mining regulations required information similar to that required to be submitted to the Pennsylvania Department of Environmental Resources under statutes regulating surface mining.[1] The new ordinance provisions also regulated other surface mining activities, including construction of structures near streams and wetlands, timber harvesting, extraction of

1. Surface Mining Conservation and Reclamation Act, Act of May 31, 1945, P.L. 1198, *as amended*, 52 P.S. §§ 1396.1–1396.31; Noncoal Surface Mining Conservation and Reclamation Act, Act of December 19, 1984, P.L. 1093, 52 P.S. §§ 3301–3326.

coal, excavations and fills, stormwater management and blasting.

Holding that these regulations, seeking to regulate surface mining operations, were more extensive than the traditional land use controls, this court reversed the trial court's dismissal of the declaratory judgment action and remanded the case for consideration on its merits.

Therefore, in examining the propriety of equity jurisdiction here, one must turn to see whether the City of Pittsburgh has enacted a blend of operational and locational regulations similar to Conemaugh Township's surface-mining controls or akin to the melange invalidly erected by Plymouth Township against the refuse disposal facility.

### The Regulations at Issue Here

First, one must note that the City of Pittsburgh in this case, in terms of ordinance categories, has enacted only an amendment to its Zoning Code. This case involves no municipal regulations outside of the formal zoning ordinance category, as was true in *Plymouth Township.*

All of the helicopter regulations appear in the amending ordinance, Ordinance No. 40 of 1990, so that examining it can provide the answer as to whether equity jurisdiction is necessary or appropriate.

Ordinance No. 40, in A, begins by announcing seven definitions of helicopter facilities, describing the scope of the following terms:

Helicopter landing area

Heliport

Helipad

Helistop

Helicopter public use landing area

Helicopter general private use landing area

Helicopter medical private use landing area

These definitions are, in form and content, characteristic of definitions of facilities or installations commonly found in

zoning ordinances. None of them prescribe details of operation; they only classify the various types of helicopter facilities. Those definitions are placed in § 903.02 of the Pittsburgh Zoning Code. In *Klein II,* 164 Pa.Commonwealth Ct. at 525, n. 1, 643 A.2d at 1109, n. 1, the definitions are quoted or described in detail.

Next, Ordinance 40, in B, added to Zoning Code a new section, § 981.11, as to "helicopter landing areas," which is the generic term embracing all types of helipads, heliports and helistops. A summary of the new content is as follows:

(a) Helicopter landing areas are not allowed if their flight paths extend over schools, with a medical exception allowable by Zoning Board of Adjustment;

(b) Helicopter landing areas are to be located at least 180 feet from school playing field facilities, with a medical exception allowable by Zoning Board of Adjustment;

(c) Helicopter landing areas must be located at least 400 feet from an elementary or secondary school building;

(d) Helicopter landing areas with specified flight frequency must be located at least 400 feet from residential uses, except that medical helistops are subject to different spacing requirements;

(e) Helicopter landing areas of lesser activity must be located at least 300 feet from residential uses, except that medical helistops are subject to different spacing requirements;

(f) Helicopter landing areas are not permitted on rooftops in commercial districts;

(g) Each helicopter landing area must be spaced at least 2,000 feet from any other helicopter landing area, except medical landing areas, which are subject to 1,500–foot spacing between them;

(h) Helicopter landing areas shall be set back at least 50 feet from property lines;

(i), (j), (k) Helicopter landing areas must be ones licensed and controlled by federal or state aviation agencies;

(*l*) Helicopter landing areas must maintain a log of arrivals and departures (for determination of flight frequency categories mentioned above);

(m) Helicopter landing areas must meet other conditions required by the Board of Adjustment, Planning Commission, council and building code related to hours of operation, number of helicopters based, type of operation surface transportation, parking, site circulation and other aspects;

(n) Helicopter landing area applicants must submit a site plan, with proof that the county aviation department has been invited to comment to the city.

Amending Ordinance No. 40 of 1990, in C, amended Code § 993.01(a)A–"Conditional Use Exceptions Permitted by Council Approval" by revising Exception No. (11) in two respects.

First, subitem (11)a was amended to provide that heliports in industrial districts would require an environmental report involving sixteen specific environmental categories, out of the twenty outlined by the Federal Aviation Administration in its Order 5050.4A, Airport Environmental Handbook.

Next, under b, helipads in commercial, special, industrial and institutional districts were required to have an environmental report addressing the foregoing environmental categories.

Ordinance No. 40 of 1990, in D, amended the existing conditional use exception (8) in § 993.01(a)A, at the beginning of (8) and also at the end of (8). At the beginning, there was inserted the first part of the D portion of the amendment:

(8) Hospital and Unit Group Building thereof *including Helicopter Medical Private–Use Landing Area for a helistop (See Section 981.05 and 981.11):* .....

The portion underlined was the new language added by the amendment. The five-dot ellipsis indicated the retention of *pre-existing* material in the Code extending from the colon (:) through *pre-existing* items a-e inclusive. The amendment then added an additional item f, requiring an environmental report addressing the environmental categories listed above.

Thus, the same environmental report requirement applied to helicopter landing areas in various districts was also applied to the medical helistops involved in this case, in connection with the medical helistop treatment in the conditional use authorization article.

Next, Ordinance No. 40 of 1990, in E, amended Code § 909.06(b), relating to special exceptions allowable by the board of adjustment (in commercial, special, industrial and institutional districts), by applying the new § 981.11 to them, requiring the same environmental report as is mandated by the above requirements, and also requiring a noise analysis.

The remaining portions of Ordinance No. 40 of 1990—F, G, H, and I—made routine amendments to existing cross-referencing portions of the Code.

### ANALYSIS

Comparison of the above description of the *Plymouth Township* regulations with the foregoing detailed listing of the helicopter provisions placed in the Pittsburgh Zoning Code by the 1990 amendment, shows that, despite the intricacy of both aggregations of municipal regulations, Plymouth Township set out to govern the way in which refuse disposal facilities would be operated, not just where they were located and what spacing and dimensional requirements applied to them.

Similarly, Conemaugh Township in *Pennsylvania Coal* embarked upon the regulation of the ongoing process of surface mining and related activities such as timber harvesting, excavations and fills, stormwater management and blasting.

In contrast, the new Pittsburgh helicopter facility zoning provisions focus primarily upon the matter of location rather than operational process. The major new section, § 981.11, declares at its outset:

The following regulations shall govern and control the *erection, installation* and *enlargement* of all helicopter facilities, including heliports, helipads, and helistops. (Emphasis added.)

Note that the emphasized nouns deal with location and size—i.e., zoning concerns—not with operational matters.

As listed above, the items added by the B portion of the amendment, within § 981.11, deal with location in relation to schools (a), (b), (c); residential uses and commercial districts (d), (e), (f); proximity to each other (g); or to property lines (h).

The same provisions in the amendment leave the licensing and controlling of helicopter facilities to the aviation agencies of other governments, making reference to licensed facilities in order to limit those entitled to legal recognition as helicopter facilities (i), (j), (k).

Requirements of environmental reports are logically related to the zoning decision of allowing or disallowing the facility to be located in a particular site in relation to other components of the urban landscape.

In (m) there is reference to the imposition of conditions as to hours of operation, a matter which has long been encountered in zoning administration in Pittsburgh, *Wm. Chersky Joint Enterprises v. Board of Adjustment,* 426 Pa. 33, 231 A.2d 757 (1967).

Finally, the requirement in the B portion of the amendment requiring submission of a site plan (n), is associated with many zoning regulations in general and other provisions of Pittsburgh's Code in particular.

For the zoning issues represented by the provisions involved in this case and the questions raised by objectors concerning them, the use of the statutory zoning appeal procedure is exclusive. *Knup v. Philadelphia,* 386 Pa. 350, 126 A.2d 399 (1956); *Pittsburgh Outdoor Advertising Co. v. Clairton,* 390 Pa. 1, 133 A.2d 542 (1957), *Shender v. Philadelphia,* 375 Pa. 596, 101 A.2d 667 (1954).

The use of equity jurisdiction is particularly inappropriate when, as in this case, a statutory zoning appeal is already being pursued. *Costa v. Pittsburgh,* 177 Pa. Superior Ct. 380, 110 A.2d 884 (1955).

## CONCLUSION

Therefore, Trial Judge McLean was correct in disallowing the use of an equity and declaratory judgment proceeding when the issues exclusively involved are zoning matters, that can be fully adjudicated in the statutory zoning appeal.

Count I of the complaint in this case, seeking to bar the issuance of building permits, and Count III, seeking to have the zoning amendment declared invalid are the counts most clearly duplicative of the remedies available in the statutory zoning appeal.

Count II, as pleaded in the complaint, sounds in terms of nuisance, averring that the objectors' property, comfort and well-being are faced with irreparable harm as a consequence of the existence and environmental aspects of the medical helistop in question. There is no doubt that an equity action may be pursued to seek an injunction against an existing or threatened nuisance, even if the land, structures or activities causing the nuisance have been authorized under zoning procedures. That is, a land use can obtain a proper zoning approval under a zoning ordinance which is valid, and yet, by reason of the manner of its operation or its particular nature, still constitute a nuisance subject to an equitable remedy.

However, the objectors here, in their Statement of the Question Involved on this appeal, pursued only the question of "jurisdiction in an equity and declaratory judgment proceeding to decide ordinance validity questions ... without first exhausting administrative remedies for the invalidation of the zoning provisions."

Hence no nuisance claim as such has been presented. Accordingly, this court's decision must be to affirm, with no remand for non-zoning litigation as to nuisance.

PELLEGRINI, J., did not participate in the decision in this case.

## ORDER

NOW, June 6, 1994, the order of the Court of Common Pleas of Allegheny County at No. GD 92–7654, dated October 8, 1992, is affirmed.