Teresa KAPTON, Appellant,

v.

**BELL ATLANTIC NYNEX MOBILE and Cecil Township.**

Commonwealth Court of Pennsylvania.

Argued March 13, 1997.
Decided Sept. 11, 1997.

Raymond Radakovich, Pittsburgh, for appellant.

Joseph A. Cortese, Washington, for appellee, Bell Atlantic Nynex.

Noah Geary, Washington, for appellee, Cecil Township.

Before PELLEGRINI and KELLEY, JJ., and RODGERS, Senior Judge.

RODGERS, Senior Judge.[1]

Teresa Kapton (Appellant) appeals from an order of the Court of Common Pleas of

---

1. This case was reassigned to the author on July 1, 1997.

Washington County (trial court) that granted the preliminary objections filed by Bell Atlantic NYNEX Mobile (N.Y.NEX) and Cecil Township (Township) (collectively NYNEX) and dismissed Appellant's complaint in equity. We affirm.

On March 19, 1996, Appellant filed a complaint in equity against NYNEX alleging that NYNEX committed an actionable harm by erecting a 270 foot cellular telephone tower for commercial purposes on property adjacent to Appellant's. Both Appellant's and NYNEX's properties are located in an R–1 zoning district, which provides for residential and agricultural uses. In November of 1995, NYNEX filed an application for a building permit to erect the tower. The zoning officer granted the permit based on his conclusion that the tower was an "essential service." [2]

Prior to granting the permit, the zoning officer referred NYNEX to the Township Planning Commission, which reviewed NYNEX's request at a public hearing and granted it subject to completion of the appropriate application form. After the application form was submitted, NYNEX's request was approved and a building permit was issued. The tower was constructed during the months of January and February, 1996. Meanwhile, no action was taken by Appel-

lant. Then in March, 1996, Appellant filed her complaint in equity, alleging that (1) the communication facility constituted a nuisance, (2) the use of the property did not comply with the zoning ordinance and the Township had failed to enforce the provisions of the ordinance, and (3) the electromagnetic fields generated by the tower created a health and welfare risk to Appellant.

NYNEX filed preliminary objections, seeking the dismissal of the complaint. The preliminary objections were granted by the trial court, based on its conclusions that the alleged zoning violations should have been addressed to the zoning hearing board, which has exclusive jurisdiction over such matters [3] and that the allegations concerning the harmful effects from radio frequency emissions were preempted by the Telecommunications Act of 1996 (Federal Act), 47 U.S.C. § 332(c)(7)(B)(iv). [4]

On appeal to this Court, [5] Appellant raises the following issues: (1) whether the zoning hearing board had exclusive jurisdiction to hear and render a final adjudication concerning the erection of the communications tower; and (2) whether the Federal Act provides cause for dismissal of Appellant's complaint. [6]

---

**2.** Section 502 of the Township's Ordinance, entitled Planned Residential Development Regulations for the R–1 District, provides in Section 502.1.B that "[a]ccessory commercial, service, and other non-residential uses may be permitted or required where such uses are scaled primarily to serve the residents of the Planned Residential Development and the surrounding community." (Township's Ordinance, R.R. at p. 110a.)

**3.** Section 909.1 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* added by the Section 87 of the Act of December 21, 1988, P.L. 1328, 53 P.S. § 10909.1, provides, in pertinent part, that:

(a) The zoning hearing board shall have exclusive jurisdiction to hear and render final adjudications in the following matters:

. . . .

(3) Appeals from the determination of the zoning officer, including, but limited to, the granting or denial of any permit, or failure to act on the application therefor, the issuance of any cease and desist order or the registration or refusal to register any nonconforming use, structure or lot.

**4.** Section 332(c)(7)(B)(iv) provides:

(iv) No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [Federal Communications] Commission's regulations concerning such emissions.

**5.** Initially, Appellant filed an appeal of the trial court's order with the Superior Court. By order dated August 27, 1996, the appeal was transferred to this Court.

**6.** Our scope of review of a challenge to the sustaining of preliminary objection in the nature of a demurrer is to determine whether on the facts alleged the law states with certainty that no recovery is possible. *Anelli v. Arrowhead Lakes Community Association, Inc.,* 689 A.2d 357 (Pa. Cmwlth.1997). We must accept as true all well pleaded allegations and material facts averred in the complaint, as well as inferences reasonably deducible therefrom and any doubt should be resolved in favor of overruling the demurrer. *Id.*

Although Appellant frames the first issue as jurisdictional, she first argues that the zoning ordinance does not permit the type of structure built by NYNEX in a residential zone and that the existence of the tower is a nuisance because it is an obstruction and an unsightly structure which invades the private use and enjoyment of her land. Appellant recognizes that, pursuant to Section 909.1 of the MPC, the zoning hearing board has exclusive jurisdiction to hear and render a final adjudication from a zoning officer's grant or denial of any permit; however, she maintains that the two months in which the tower was being built did not provide her the opportunity to challenge the building permit. Therefore, Appellant contends that her only recourse was a suit in equity. This argument acknowledges that if Appellant had been properly vigilant, she could have appealed to the zoning hearing board as an aggrieved or affected party.

With respect to Appellant's jurisdictional argument, we believe that *Klein v. Shadyside Health, Education and Research Corp.,* 164 Pa.Cmwlth. 546, 643 A.2d 1120 (1994), is instructive. In *Klein,* the objectors brought an action in equity, challenging the erection, installation and enlargement of a helicopter facility. The court explained that an action in equity does not lie when the primary focus is on zoning provisions. The *Klein* court held that zoning procedures are an exclusive remedy when the issues involve location and size of the facility.

The *Klein* court recognized that an equity action may be pursued to seek injunctive relief against existing or threatened nuisances even if the land, structures or activities causing the nuisance had been authorized under the zoning procedure, i.e., a land use can have proper zoning approval under an ordinance, but because of the manner of its operation the use can still constitute a nuisance, subject to an equitable remedy. *Id.* However, the *Klein* court noted that the objectors in that case did not exhaust the administrative remedies, pursued only the question of jurisdiction in the equity action and presented no nuisance claim.

■ Section 617 of the MPC, 53 P.S. § 10617, allows:

[A]ny aggrieved owner or tenant of real property who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding to prevent, restrain, correct or abate such building [or] structure . . . to prevent, in or about such premises, any act, conduct, business or use constituting such a violation.

*See also Frye Construction, Inc. v. City of Monongahela,* 526 Pa. 170, 584 A.2d 946 (1991). A cause of action sounding in nuisance would come within the dictates of this section of the MPC. However, here as in *Klein,* Appellant has failed to state a cause of action in nuisance. In her brief, Appellant does not dispute that the tower in question is a noiseless, odorless and unmanned facility requiring only periodic maintenance visits. She merely states that such periodic maintenance may be distracting to her and the presence of the tower may reduce the value of her property. Such boilerplate allegations fail to allege specifically the significant harm required by law. *Kembel v. Schlegel,* 329 Pa. Superior Ct. 159, 478 A.2d 11 (1984).

In her complaint, Appellant avers that construction activities, such as congestion, noise and traffic affected her, but she does not aver that any specific activity emanating from the structure after its completion reduces her enjoyment of her property. The standard to be applied is whether or not the tower would cause significant harm. *Id.* No significant harm is alleged in this complaint.

■ With regard to the issue concerning the alleged risk posed by radio frequency transmissions, Appellant concedes that the Federal Act preempts the field. *See Westinghouse Electric Corp. v. Council of the Township of Hampton,* 686 A.2d 905 (Pa. Cmwlth.1996) (court noted the application of 47 U.S.C. § 332(c)(7)(B)(iv) when addressing any health risks associated with cellular towers). Appellant requests that this cause of action be stricken, allowing the case to pro-

Preliminary objections, the result of which would be the dismissal of a cause of action, should be

sustained only in cases that are clear and free from doubt. *Id.*

ceed on her nuisance claim. Thus, we need not determine the preemption issue, because we will not grant relief based on an argument that Appellant has abandoned.

For the reasons stated above, we affirm the trial court's order granting the Township's and NYNEX's preliminary objections and dismissing Appellant's complaint in equity.

### ORDER

NOW, September 11, 1997, the order of the Court of Common Pleas of Washington County, at No. 96–1453, dated July 25, 1996 is affirmed.

KELLEY, Judge, dissenting.

I respectfully dissent.

As noted by the majority, our scope of review of a challenge to the sustaining of preliminary objections in the nature of demurrer is to determine whether on the facts alleged the law states with certainty that no recovery is possible. *Anelli v. Arrowhead Lakes Community Association, Inc.,* 689 A.2d 357 (Pa.Cmwlth.1997). We must accept as true all well pleaded allegations and material facts averred in the complaint, as well as inferences reasonably deducible therefrom and any doubt should be resolved in favor of overruling the demurrer. *Id.* Preliminary objections, the result of which would be the dismissal of a cause of action, should be sustained only in cases that are clear and free from doubt. *Id.*

In this appeal, Appellant first claims that the trial court erred in dismissing her complaint as she failed to avail herself of the administrative remedy contained in section 909.1(a)(3) of the Municipalities Planning Code (MPC).[1] In the first two counts of her complaint filed in the trial court Appellant alleged, *inter alia,* that the construction and use of the tower is in violation of the Cecil Township Zoning Ordinance. In ruling on the trial court's dismissal of the complaint, we are required to accept these allegations as true. *Anelli.*

Section 617 of the MPC provides, in pertinent part:

In case any building [or] structure ... is, or is proposed to be, erected, constructed ... or used in violation of any ordinance enacted under this act or prior enabling laws ... any aggrieved owner or tenant of real property who shows that his property or person will be substantially affected by the alleged violation, in addition to other remedies, may institute any appropriate action or proceeding to prevent, restrain, correct or abate such building [or] structure ... or to prevent, in or about such premises, any act, conduct, business or use constituting a violation.

53 P.S. § 10617. Thus, contrary to the majority's assertion, because Appellant alleged that the offending structure violated the zoning ordinance, she was not required to exhaust the administrative remedy contained in section 909.1(a)(3) before seeking equitable relief under section 671. *Frye Construction, Inc. v. City of Monongahela,* 526 Pa. 170, 584 A.2d 946 (1991); *In re Leopardi,* 516 Pa. 115, 532 A.2d 311 (1987).

In addition, Appellant alleged in her complaint that such a use of the property constitutes a private nuisance in that: it will increase congestion, noise and traffic in the area; interfere with her use and enjoyment of her property; reduce the value of her property; and create a dramatic increase in the electromagnetic fields on her property creating a risk to her and her family's health and welfare, causing her annoyance and distress, and disturbing her peaceful enjoyment of her property. Again, in ruling on the trial court's dismissal of the complaint, we are required to accept these allegations as true. *Anelli.*[2]

---

1. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10909.1(a)(3).

2. Also contrary to the majority's assertion, if *these* allegations are presumed to be true, they most certainly allege a valid cause of action sounding in nuisance. A nuisance is the invasion of another's interest in the use and enjoyment of

her land. *Harford Penn–Cann Service, Inc. v. Zymblosky,* 378 Pa. Superior Ct. 578, 549 A.2d 208 (1988). This invasion of another's interest must cause "significant harm", which is a harm of some importance involving more than a slight inconvenience. *Id.* Thus, in order to constitute a nuisance there must be a real and appreciable interference with one's use of one's land. *Id.*

It is clear that Appellant's failure to pursue the statutory remedy under section 909.1(a)(3) does not preclude her from seeking equitable relief in an action sounding in nuisance. It is well settled that where a nuisance exists, equity may intervene to enjoin it even though there has been a compliance with the relevant zoning ordinance. *Mazeika v. American Oil Company*, 383 Pa. 191, 118 A.2d 142 (1955); *Perrin's Appeal*, 305 Pa. 42, 156 A. 305 (1931); *Fairview Township v. Schaefer*, 128 Pa.Cmwlth. 79, 562 A.2d 989 (1989). As we have previously noted:

> There is no doubt that an equity action may be pursued to seek an injunction against an existing or threatened nuisance, even if the land, structures or activities causing the nuisance have been authorized under zoning procedures. That is, a land use can obtain a proper zoning approval under a zoning ordinance which is valid, and yet, by reason of the manner of its operation or its particular nature, still constitute a nuisance subject to an equitable remedy.

*Klein v. Shadyside Health, Education and Research Corporation*, 164 Pa.Cmwlth. 546, 643 A.2d 1120, 1125 (1994). Thus, contrary to the majority's assertion, Appellant was not precluded from seeking equitable relief for the alleged nuisance even though she had failed to challenge Bell Atlantic NYNEX Mobile's proposed use of the land before the local zoning hearing board. As a result, I would conclude the trial court erred in dismissing Appellant's complaint because she failed to exhaust the administrative remedy under section 909.1(a)(3) of the MPC.

In this appeal Appellant next claims that the trial court erred in dismissing her complaint because section 332(c)(7) of the Federal Telecommunications Act of 1996(Act)[3]

Clearly, an increase in the congestion, noise and traffic in the area from the construction and use of the tower, and the annoyance, distress and deleterious health effects caused by the increased electromagnetic fields flowing from its use constitute an actionable nuisance. *See, e.g., Bedminster Township v. Vargo Dragway, Inc.*, 434 Pa. 100, 253 A.2d 659 (1969) (Noise emanating from the use of land as a drag strip in an area of a residential and farming character constituted a nuisance); *Anderson v. Guerrein Sky–Way Amusement Co.*, 346 Pa. 80, 29 A.2d 682 (1943) (Noise emanating from the use of land as a drive-in theater in a purely residential district constituted a nuisance); *Harford Penn–Cann Service, Inc.* (Health problems and lost business suffered by a gas station/restaurant due to dust problems caused by the operation of a truck stop constitute a nuisance); *Evans v. Moffat*, 192 Pa. Superior Ct. 204, 160 A.2d 465 (1960) (Noxious and foul-smelling gases emanating from mine refuse dumps which caused damage to nearby homes in residential district constituted a nuisance).

3. 47 U.S.C. § 332(c)(7). The Act amended a number of the provisions of the Communications Act of 1934, 47 U.S.C. §§ 151—613. Section 332(c)(7) of the Act provides, in pertinent part:
  **(7) Preservation of local zoning authority**
    **(A) General authority**
    Except as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over decisions regarding the placement, construction, and modification of personal wireless service facilities.
    **(B) Limitations**
      **(i)** The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof-
      **(I)** shall not unreasonably discriminate among providers of functionally equivalent services; and
      **(II)** shall not prohibit or have the effect of prohibiting the provision of personal wireless services
      **(ii)** A State or local government or instrumentality thereof shall act on any request for authorization to place, construct, or modify personal wireless service facilities within a reasonable period of time after the request is duly filed with such government or instrumentality, taking into account the nature and scope of such request.
      **(iii)** Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record.
      **(iv)** No State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [Federal Communications] Commission's regulations concerning such emissions.
      **(v)** Any person adversely affected by any final action or failure to act by a State or local government or any instrumentality thereof that is inconsistent with this subparagraph may, within 30 days after such action or failure to act, commence an action in any court of competent jurisdiction. The court shall hear and decide such action on an expedited basis. Any

preempted any inquiry into whether the radio frequency emissions from the tower constituted a private nuisance as alleged in her complaint.[4]

As the stated purpose of the Act, section 151 of the Act provides:

> For the purpose of regulating interstate and foreign commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States, without discrimination on the basis of race, color, religion, national origin, or sex, a rapid, efficient, Nationwide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communication, and for the purpose of securing a more effective execution of this policy by centralizing authority heretofore granted by law to several agencies and by granting additional authority with respect to interstate and foreign commerce in wire and radio communication, there is created a commission to be known as the "Federal Communications Commission", which shall be constituted as hereinafter provided, and which shall execute and enforce the provisions of this chapter.

47 U.S.C. § 151.

In addition, as noted above, section 332(c)(7) of the Act initially states that "[e]xcept as provided in this paragraph, nothing in this chapter shall limit or affect the authority of a State or local government or instrumentality thereof over the decisions regarding the placement, construction, and modification of personal wireless service facilities." 47 U.S.C. § 332(c)(7)(A). However, section 332(c)(7) of the Act further provides, "[n]o State or local government or instrumentality thereof may regulate the placement, construction, and modification of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that such facilities comply with the [Federal Communications] Commission's regulations concerning such emissions." 47 U.S.C. § 332(c)(7)(B)(iv).

Thus, in order to further the stated purposes of the Act, the foregoing provisions of the Act prohibit a state or local municipality from regulating the construction of personal wireless service facilities on the basis of the environmental effects of radio frequency emissions to the extent that they comply with the relevant Federal Communications Commission's regulations. However, by their terms, it is clear that the foregoing provisions do not even arguably relate to a case such as this, where a private individual has instituted an action sounding in nuisance based on the deleterious effects of radio frequency emissions of a personal wireless service facility.

Moreover, section 414 of the Communications Act of 1934 provides:

> Nothing in this chapter contained shall in any way abridge or alter the remedies

---

person adversely affected by an act or failure to act by a State or local government or any instrumentality thereof that is inconsistent with clause (iv) may petition the Commission for relief.

**(C) Definitions**

For purposes of this paragraph-

**(i)** the term "personal wireless services" means commercial mobile services, unlicensed wireless services, and common carrier wireless exchange access services;

**(ii)** the term "personal wireless service facilities" means facilities for the provision of personal wireless services; and

**(iii)** the term "unlicensed wireless service" means the offering of telecommunications services using duly authorized devices which do not require individual licenses, but does not mean the provision of direct-to-home satellite

services (as defined in section 303(v) of this title).

**4.** The majority opinion states that Appellant concedes that the Act preempts any inquiry into the alleged risk imposed by radio frequency transmissions. To the contrary, Appellant argues that the provisions of the Act "seemed to convey jurisdiction upon any court of competent jurisdiction involving facility sitings under certain circumstances." *Brief for Appellant, p. 9.* Appellant then argues in the alternative that if it is determined that the Act preempts any inquiry into this claim, it does not require the dismissal of the other nuisance claims in the complaint. *Id.* As a result, unlike the majority, I do not believe that this claim has been abandoned by Appellant and it should be addressed on the merits.

now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies.

47 U.S.C. § 414.[5] As a United States District Court has noted:

> Under the [provisions of section 414 of the Communications] Act, federal remedies, therefore, are cumulative to those already existing at common law or by statute. While the national government may have preempted the field in regulation of telephone and wire communication systems under the Communications Act, the Act was not designed as a new code for the adjustment of private rights. Specifically, state tort law of invasion of privacy was not preempted by the federal scheme, and no attempt was made to impose uniformity in this area of state law.

*Ashley v. Southwestern Bell Telephone Company,* 410 F.Supp. 1389, 1393 (W.D.Tex. 1976). *See also Cooperative Communications, Inc. v. AT & T Corp.,* 867 F.Supp. 1511, 1516 (D.Utah 1994) ("[I]n enacting the Communications Act, it is manifest that Congress intended to occupy the field of telecommunications, in order to make available to all people of the United States a rapid, efficient, reasonably-priced communications service, governed by one uniform regulatory scheme. However, inclusion of the savings clause[, in section 414,] clearly indicates Congress' intent that independent state law causes of action, such as interference with contract or unfair competition, not be subsumed by the Act, but remain as separate causes of action. Hence, while some state law claims may relate to providers of telecommunications service, but nevertheless stand as independent claims not arising under the Communications Act . . .").

Thus, to achieve the stated purposes of the Act, the Federal Congress has specifically limited the ability of a state or local government to regulate the placement or construction of personal wireless service facilities, and has afforded providers of such services with a form of redress should a state or local government violate the provisions of the Act. *See, e.g., Bell Atlantic Mobile Systems, Inc. v. Zoning Hearing Board of the Township of*

*O'Hara,* 676 A.2d 1255 (Pa.Cmwlth.1996), *petition for allowance of appeal granted,* 547 Pa. 458, 691 A.2d 458 (1997). However, the Federal Congress has also specifically stated that the provisions of the Act do not "[i]n any way abridge or alter the remedies now existing at common law or by statute. . . ." 47 U.S.C. § 414. Clearly, the provisions of section 332 of the Act do not eliminate or affect the ability of Appellant to maintain an action sounding in nuisance under the law of Pennsylvania. *Ashley; Cooperative Communications, Inc.* As a result, I would conclude that the trial court erred in dismissing Appellant's complaint on the basis that section 332(c)(7) of the Act preempted any inquiry into whether the radio frequency emissions from the tower constituted a private nuisance as alleged in her complaint.

---

**5.** Section 414 of the Communications Act of 1934 was not amended by the Act.