612 A.2d 1090

**PENNSYLVANIA COAL COMPANY, INC.; Elizabéth A. Rouda-bush; Harvey Stineman and Christopher Stineman trading as J.C. Stineman and Associates; Pennsylvania Coal Association; and Paul A. Cooney, James R. Cooney and Charles M. Cooney trading as Cooney Bros. Coal Co., Appellants,**

v.

**TOWNSHIP OF CONEMAUGH, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Feb. 7, 1992.

Decided March 26, 1992.

Publication Ordered July 6, 1992.

Petition For Allowance of Approval Denied Jan. 6, 1993.

Stanley R. Geary, for appellants.

William Gleason Barbin, for appellee.

Before McGINLEY and FRIEDMAN, JJ., and NARICK, Senior Judge.

McGINLEY, Judge.

The Pennsylvania Coal Company, Cooney Bros. Coal Co., J.C. Stineman and Associates and Elizabeth A. Roudabush (collectively, Owners), and the Pennsylvania Coal Association (Association) appeal from an order of the Court of Common Pleas of Cambria County (common pleas court) that granted the preliminary objections of Conemaugh Township (Township) and dismissed Owners' complaint seeking declaratory judgment on the validity of the Township's Zoning Ordinance (Ordinance) regulating surface mining operations. We reverse and remand.

Owners are property owners or lessees of land on which surface coal mining operations, permitted by the Department

of Environmental Resources (DER), are conducted. Owners also own or lease other properties in the Township with surface mineable coal and other reserves. The Association is a non-profit association of surface and underground bituminous coal mine operators. Several of the Association's members own or lease coal reserves in the Township.

On January 2, 1991, the Township approved a comprehensive amendment to the Ordinance. The new provisions of the Ordinance extensively regulate the operation of surface coal and noncoal mining activities. On January 30, 1991, Owners filed a complaint in the common pleas court seeking a declaratory judgment invalidating these provisions.[1] In Count I of their complaint, Owners contend that the Ordinance provisions regulating surface mining are invalid on the grounds that they are preempted by state statutes regulating surface mining and reclamation operations. In Count II, Owners contend that the Ordinance prohibits surface mining in all but one district and thus deprives Owners of their property without just compensation and violates their rights to due process and equal protection under the state and federal constitutions. In Count III, Owners contend that the Ordinance provisions regulating surface mining bear no rational relation to the protection of the public health, safety or welfare of the Township and amounts to an impermissible de facto exclusion of surface mining operations in the Township. In Count V, Owners seek an injunction preventing the Township from enforcing the challenged provisions of the Ordinance or otherwise interfering with Owners' coal mining operations.

On February 8, 1991, the Township filed preliminary objections to the complaint, asserting that the ZHB has exclusive jurisdiction over the Owners' challenge to the Ordinance and that these same issues have been raised in Owners' appeal pending before the ZHB. The Township also demurred on the ground that Owners have failed to state a cause of action in preemption. On June 25, 1991, the common pleas court sustained the Township's preliminary objections and dismissed

1. On January 27, 1991, Owners filed a substantive appeal attacking the same provisions before the Township's Zoning Hearing Board (ZHB).

Owners' complaint, noting that Owners' substantive appeal before the ZHB raises the same issues. In an opinion in support of its order the common pleas court noted that pursuant to Section 909.1(a) of the Pennsylvainia Municipalities Planning Code (MPC),[2] the ZHB has exclusive jurisdiction to hear all issues raised by Owners and that the MPC provides a full and adequate statutory remedy. The common pleas court also rejected Owners' contention that the Ordinance provisions regulating surface mining operations were preempted by state and federal law. Owners timely appealed.

Owners contend the common pleas court erred in holding that they have an adequate statutory remedy, which they are pursuing via a substantive challenge to the Ordinance before the ZHB, because the challenged provisions regulate the operation of surface mining and reclamation operations; that the common pleas court erred in remanding Owners' complaint to the ZHB because the ZHB has no power to adjudicate complaints for equitable or declaratory relief; and that the common pleas court erred in holding that the Ordinance provisions regulating surface mining were not preempted by the Surface Mining Conservation and Reclamation Act (SMCRA),[3] and Noncoal Surface Mining Conservation and Reclamation Act (N–SMCRA).[4] Our review of a common pleas court's order sustaining preliminary objections is limited to a determination of whether the objections were properly sustained, resolving any doubt by overruling the objections. *Appeal of Hempfield Township,* 102 Pa.Commonwealth Ct. 514, 518 A.2d 1314 (1986).

Owners' first contention is that the common pleas court erred in holding that Owners have an adequate statutory remedy at law on the ground that Owners' substantive challenge to the Ordinance before the ZHB provides an adequate

2. Act of July 31, 1968, P.L. 805, *as reenacted and amended* by Act of December 21, 1988, P.L. 1329, 53 P.S. § 10901(a).

3. Act of May 31, 1945 P.L. 1198, *as amended,* 52 P.S. §§ 1396.1–1396.31.

4. Act of December 19, 1984, P.L. 1093, 52 P.S. §§ 3301–3326.

remedy thereby divesting the common pleas court of jurisdiction. Owners contend that the Township is not really regulating zoning but regulating an area which the state has preempted. In *Plymouth Township v. Montgomery County*, 109 Pa.Commonwealth Ct. 200, 531 A.2d 49 (1987), this Court noted that courts have jurisdiction to review and negate local ordinances regulating the *operation* of waste disposal facilities which are qualitatively different from traditional zoning ordinances regulating the *location* of these facilities. *Id.* at 208, 531 A.2d at 53. In *Plymouth Township* we concluded that where a township inextricably connects zoning provisions with operation regulations, the administrative process is not adequate, and equity jurisdiction is appropriate in the common pleas court to achieve a prompt and unified resolution. *Id.* at 209, 531 A.2d at 53.

In the present case the challenged provisions of the Ordinance clearly regulate the operation of surface coal mining in the Township in addition to location and physical configuration. For example, Section 902 requires surface mining applicants to submit to the Township information already required to be submitted to DER to obtain a permit under its regulations. *See* Reproduced Record (R.R.) at 84a–88a. Also, the Ordinance regulates the operation of other activities which are appropriate aspects of surface mining, specifically: Sections 409 and 410 (construction of structures within specified distances of streams or wetlands); Section 1412 (timber harvesting); Section 1414 (extraction of coal); Section 1418 (excavations and fills); Section 1419 (storm water management); and Section 1420 (blasting).

A review of these provisions of the Ordinance indicates that the Township seeks to regulate the operation of surface mining activities within its borders. These provisions are more extensive than the traditional land use controls accomplished by zoning. In accord with *Plymouth Township*, we must conclude that the common pleas court erred in holding that the ZHB has exclusive jurisdiction of all challenges to the

Ordinance, and accordingly we conclude that the common pleas court erred in dismissing Owners' equity complaint.

■ Owners' second contention is that the provisions of the Ordinance regulating surface mining are expressly preempted by Section 17.1 of SMCRA[5] and Section 16 of N–SMCRA.[6] In *Miller & Son Paving, Inc. v. Wrightstown Township*, 499 Pa. 80, 451 A.2d 1002 (1982) our state Supreme Court examined the applicability of former Section 17 and its successor, Section 17.1 of SMCRA. In *Miller* the Court states:

The term 'preempts,' contained in the second sentence of Section 17 [now Section 17.1] ordinarily refers to an act which precludes action on the same subject by another in the future. No rule of logic or syntax permits the construction that the Legislature's preemption of future regulation affects zoning ordinances which were in existence on the effective date of the Act and thus are specifically preserved from supersession.

*Id.* at 87, 451 A.2d at 105.

■ The effective date of Section 17.1 of SMCRA is January 1, 1972. Section 16 of N–SMCRA became effective 60 days after its enactment on December 19, 1984 (on or about February 18, 1985). Because Section 17.1 of SMCRA and Section 16 of N–SMCRA are identical, we conclude that the rationale of the Supreme Court's decision in *Miller* applies as well to Section 16 of N–SMCRA. In the present case, the Township adopted the challenged provisions on January 2,

5. 52 P.S. § 1396.17a. Section 17.1 of SMCRA provides:
Except with respect to ordinances adopted pursuant to the Act of July 31, 1968 (P.L. 805, No. 247), known as the 'Pennsylvania Municipalities Planning Code,' all local ordinances and enactments purporting to regulate surface mining are hereby superseded. The Commonwealth by this enactment hereby preempts the regulation of surface mining as herein defined.

6. 52 P.S. § 3316. Section 16 of N–SMCRA provides:
Except with respect to ordinances adopted pursuant to the act of July 31, 1968 (P.L. 805, No. 247), known as the 'Pennsylvania Municipalities Planning Code' all local ordinances and enactments purporting to regulate surface mining are hereby superseded. The Commonwealth, by this enactment, hereby preempts the regulation of surface mining as herein defined.

1991.[7] Consistent with the holding in *Miller*, we must find that all provisions of the Ordinance that regulate surface mining activities are preempted and rendered invalid.[8]

7. Because of procedural defects in the enactment of the January 2, 1991 Ordinance, it was reenacted on April 17, 1991.

8. Surface mining and related activities are defined in Section 1396.3 of SMCRA as follows:

> 'Surface coal mining activities' shall mean, for the purposes of section 4.6, activities whereby coal is extracted from the earth, from waste or stockpiles or from pits or banks by removing the strata or material which overlies or is about or between the coal or by otherwise exposing and retrieving the coal from the surface. The term shall include, but not be limited to, strip and auger mining and all surface activity connected with surface mining including exploration, site preparation, construction and activities related thereto. The term shall also include all activities in which the land surface has been disturbed as a result of, or incidental to, surface mining operations of the operator, including those related to private ways and roads appurtenant to the area, land excavations, workings, refuse banks, spoil banks, culm banks, tailings, repair areas, storage areas, processing areas, shipping areas, and areas where facilities, equipment, machines, tools or other materials or property which result from or are used in surface mining activities are situated.
> . . . .
> 'Surface mining' shall mean the extraction of minerals from the earth or from waste or stock piles or from pits or banks by removing the strata or material which overlies or is above or between them or otherwise exposing and retrieving them from the surface, including but not limited to strip, auger mining, dredging, quarrying and leaching, and all surface activity connected with surface or underground mining including but not limited to exploration, site preparation, entry, tunnel, drift, slope, shaft and borehole drilling and construction and activities related thereto, but not including those portions of mining operations carried out beneath the surface by means of shafts, tunnels or other underground mine openings. 'Surface mining' shall not include (i) the extraction of minerals (other than anthracite and bituminous coal) by a landowner for his own noncommercial use from land owned or leased by him; or (ii) the extraction of sand, gravel, rock, stone, earth or fill from borrow pits for highway construction purposes, so long as such work is performed under a bond, contract and specifications which substantially provide for and require reclamation of the area affected in the manner provided by this act; nor (iii) the handling, processing or storage of slag on the premises of a manufacturer as a part of the manufacturing process.
> 55 P.S. § 1396.3.
> These terms are also found in Section 3 of N–SMCRA which defines "surface mining" as:
> The extraction of minerals from the earth, from waste or stockpiles or from pits or from banks by removing the strata or material that overlies or is above or between them or otherwise exposing and

The order of the common pleas court dismissing the Owner's equity complaint is reversed. Because this is an equitable action in which the Owners seek injunctive as well as declaratory relief, we remand this matter for further proceedings regarding an injunction, and we direct the common pleas court to invalidate the provisions of the Ordinance challenged in Count I of the complaint (Sections 409, 410, 902C–902K, 1412, 1414, 1418, 1419 and 1420), which regulate the operation of surface mining, an activity preempted by SMCRA and N–SMCRA and appropriately regulated by DER.

## ORDER

AND NOW, this 26th day of March, 1992, the order of the Court of Common Pleas of Cambria County is reversed and the Plaintiffs' equity complaint is reinstated for further proceedings consistent with the foregoing opinion. Jurisdiction is relinquished.

retrieving them from the surface, including, but not limited to, strip mining, auger mining, dredging, quarrying and leaching and all surface activity connected with surface or underground mining, including, but not limited to, exploration, site preparation, entry, tunnel, draft, slope, shaft and borehole drilling and construction and activities related thereto; but it does not include those mining operations carried out beneath the surface by means of shafts, tunnels or other underground mine openings.
55 P.S. § 3303.