**ARBOR RESOURCES LIMITED LIABILITY COMPANY, Pasadena Oil & Gas Wyoming, L.L.C, Hook 'Em Energy Partners, Ltd. and Pearl Energy Partners, Ltd., Appellants**

v.

**NOCKAMIXON TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued Feb. 23, 2009.

Decided May 12, 2009.

---

Walter A. Bunt, Pittsburgh, for appellants.

Jordan B. Yeager, Doylestown, for appellee.

BEFORE: McGINLEY, Judge, and BUTLER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge McGINLEY.

Arbor Resources Limited Liability Company, Pasadena Oil and Gas Wyoming, L.L.C., Hook 'Em Energy Partners, LTD., and Pearl Energy Partners, LTD., (Objectors) appeal from an order of the Court of Common Pleas of Bucks County (trial court) which sustained Nockamixon Township's (Township) preliminary objection to jurisdiction and dismissed the action filed by Objectors seeking a declaration of general preemption of the Township's land use controls.

### Factual and Procedural Background

On May 14, 2008, Objectors filed a Complaint for Declaratory and Injunctive Relief[1] and challenged the substantive validity of the Township's zoning ordinances as related to the regulation of oil and gas drilling. Objectors alleged the following:

#### I. Introduction

1. The Plaintiffs [Objectors], who are the owners of 240 oil and natural gas leasehold interests located within Nockamixon Township . . . are being deprived of their legal rights to develop their oil

---

1. This litigation preceded any formal application by Objectors to the Township for permits, zoning officer's interpretation of zoning ordinances, land development issues or Township Zoning Hearing Board (ZHB) decisions. Objectors neither sought conditional use approval nor a variance for their proposed land use. Objectors did not avail themselves of any procedure outlined in the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§ 10101–11202, to challenge the substantive validity of any zoning ordinance provision.

and natural gas property interests under those leaseholds because the Township has improperly enacted two ordinances which unlawfully regulate and restrict the development of oil and natural gas.

2. The Townships' ordinances are unlawful because regulation of the development of oil and natural gas within the Commonwealth of Pennsylvania is exclusively and comprehensively within the control of the Pennsylvania Department of Environmental Protection ... through the Pennsylvania Oil and Gas Act.[2] Oil and Gas Act, Act of December 19, 1984, P.L. 1140, *as amended* by Act No. 1992–78 § 7, 58 P.S. § 601.101 *et. seq.* Moreover, the Act expressly preempts such local regulation of development of oil and natural gas. *Id.* at § 601.602.

3. Because the Plaintiffs have met all of the requirements under the Act for drilling within the Township and have been issued DEP permits to proceed with drilling within the Township, the Plaintiffs have a legal right to develop their leasehold interests.

4. Accordingly, the Township cannot lawfully place additional local restriction on the Plaintiffs, and the Township should be enjoined from enforcing the Ordinances.

. . . .

### III. Factual Background

. . . .

12. On May 18, 2006, the Board [Nockamixon Township Board of Supervisors] enacted Ordinance No. 126, which was incorporated into the Township Zoning Ordinance at § 234–23 R. . . .

13. On April 17, 2007, the Board enacted Ordinance No. 129, which was further incorporated into the Township Zoning Ordinance at § 234–23 R . . .

. . . .

17. Ordinance No. 129 *per se* prohibits oil and natural gas activities in all districts, except those zoned as 'Industrial' and 'Quarry.' Recovery in Industrial and Quarry districts is prohibited unless a written approval is first granted by the Board. . . .

18. Both Ordinance Nos. 126 and 129 ... place further restrictions upon oil and natural gas activities within the Township that ... are exclusively regulated by the DEP, pursuant to authority extended by the Act. . . . [3]

2. The Act expressly preempts local regulation with the exception of local ordinances adopted pursuant to the MPC and the Flood Plain Management Act. Section 601.602 states, in part:

> Except with respect to ordinances adopted pursuant to the act ... known as the Pennsylvania Municipalities Planning Code, and the act ... known as the Flood Plain Management Act, all local ordinances and enactments purporting to regulate oil and gas well operations regulated by this act are hereby superseded. No ordinances or enactments adopted pursuant to the aforementioned acts [the Municipalities Planning Code and the Flood Plain Management Act] ... shall contain provisions which impose conditions, requirements or limitations on the same features of oil and gas well operations regulated by this act or that accomplish the same purpose as set forth in this act. The Commonwealth, by this enactment, hereby preempts and supersedes the regulation of oil and gas wells.

3. Objectors point to the several provisions in the Ordinances as follows:

> Section 01 6.a.(5) of Ordinance No. 126 requires all drilling and production operations be set back six hundred feet from all residences or buildings used for public assemblies and from all other buildings unless the owners are a party to the oil and natural gas activities. Section 01 6.a.(5) of Ordinance No. 126 at 3; R.R. at 24a.
>
> Section 01 6.a.(6) of Ordinance No. 126 requires that all aspects of recovery be set back one hundred feet from the right-of-

. . . .

### Count I–Declaratory Relief *Oil and Gas Preemption*

. . . .

27. The Ordinances regulate oil and natural gas operations in a manner expressly preempted by the Act. . . .

28. The Ordinances contain numerous conditions, requirements or limitations . . . on the same features or accomplish the same purposes of oil and natural gas operations regulated under authority of the Commonwealth by the DEP and as such, are expressly preempted. *See* 25 Pa.Code §§ 78.1–78.314.

. . . .

30. The Ordinances require written approval from the Board before commencement of any drilling operations, even where authorization . . . has been granted by the Commonwealth through the DEP under the authority of the Act, and as such, are in direct conflict with the laws of the Commonwealth, and therefore preempted.

way of any public or private street and property line. Section 01 6.a.(6) of Ordinance No. 126 at 3–4; R.R. at 24a–25a. *Section 01 6.a.(9) of Ordinance No. 126* requires that all drilling activities must occur on a minimum lot size of 12.5 acres. Section 01 6.a.(9) of Ordinance No. 126 at 4; R.R. at 25a.

Section 01 6.d.(1) of Ordinance No. 126 prohibits habitat disturbance where threatened or endangered species or crucial habitats exist. Section 01 6.d.(1) of Ordinance No. 126 at 5: R.R. at 26a.

Section 01 6.e.(3) of Ordinance No. 126 requires that oil and natural gas activities independently meet the flood plain provision of the Township Zoning Ordinance. Section 01 6.e.(3) of Ordinance No. 126 at 5; R.R. at 26a.

Section 01 6.h.(1) of Ordinance No. 126 requires a wetland report approved by the U.S. Army Corps of Engineers must be submitted. Section 01 6.h.(1) of Ordinance No. 126 at 7; R.R. at 28a.

. . . .

### Count II—Declaratory Relief *Violation of Due Process*

32. The Plaintiffs [Objectors] and the owners of surface estates have constitutional property rights to develop their interests in oil and natural gas. . . .

33. The Ordinances are unreasonable and arbitrary, and exceeds (sic) the authority granted the Township by the Second Class Township Code and the Municipalities Planning Code because: (i) they arbitrarily apply only to oil and natural gas production; and (ii) they are not substantially related to any legitimate Township purpose.

. . . .

36. The Ordinances effectively prohibit the development of oil and natural gas within the Township, and their requirements are not rationally related to its purported purpose.

. . . .

Section 7(10) of Ordinance No. 129 prohibits multiple well pad sites on one property unless the underlying geology makes the use of a *single well pad impossible*. Section 7(10) of Ordinance No. 129 at 3; R.R. at 33a.

Section 07(12) of Ordinance No. 129 requires that all drilling and production operations be set back one thousand feet from any properties designated as landfills or containing hazardous substances. Section 07(12) of Ordinance No. 129 at 3; R.R. at 33a.

Section 10(7) of Ordinance No. 129 requires an emergency preparedness and public safety plan. Section 10(7) of Ordinance No. 129 at 5; R.R. at 35a.

Section 13(6) of Ordinance No. 129 requires operators of any well site to file a performance bond with the Township and the ZHB has limited discretion in determining the amount of the bond. Section 13(6) of Ordinance No. 129 at 6; R.R. at 36a.

38. Therefore, the Ordinances are constitutionally invalid because they deprive the Plaintiffs and the surface estate owners of property rights without due process of law.

. . . .

### Count III—Declaratory Judgment
### *Regulatory Taking*

. . . .

40. The Ordinances unreasonably restrict the property rights of the Plaintiffs.

41. By allowing the Township to withhold authorization to engage in drilling activities even where such authorization has been granted ... by the DEP, and by imposing requirements that are prohibitively difficult, expensive and/or unnecessarily duplicitous and burdensome, the Ordinances destroy the Plaintiff's property rights by prohibiting or effectively eliminating the economic viability of production within the Township. Moreover, the Ordinances also destroy the property rights of the surface estate owners by effectively eliminating any opportunity to benefit ... from ... oil and natural gas production beneath the surface estate.

42. The Ordinances have wholly deprived these property rights without just compensation, in violation of Article I, Section 10 of the Pennsylvania Constitution, and the Fifth and Fourteenth Amendments of the United States Constitution. Further, the application and enforcement of the Ordinances have caused and will continue to cause significant harm and damages to the Plaintiffs.

. . . .

### Count IV—Injunctive Relief

. . . .

45. Unless and until the Township is preliminarily and permanently enjoined from enforcing the Ordinances, the Ordinances will subject the Plaintiffs to unnecessary, unreasonable and prohibitively burdensome requirements, irreparably harming the Plaintiffs and the owners of surface estates by effectively preventing them from exercising valid property rights.

. . . .

47. Indeed, great injury to the public will occur if the Plaintiff's request for injunctive relief is denied ... [S]urface estate owners will ... be prevented from benefiting from oil and natural gas development beneath their property....

48. The Plaintiffs have no adequate remedy at law ... unless the Court enjoins enforcement of the Ordinances....

Objectors' Complaint for Declaratory and Injunctive Relief, May 14, 2008, Nos. 1–4, 12–13, 17–18, 27–28, 30, 32–38, 40–42, 45, 47–48 at 2–12; R.R. at 6a–16a.

The Township filed preliminary objections and asserted, *inter alia,* that the trial court lacked subject matter jurisdiction over challenges to the substantive validity of zoning ordinance provisions because the MPC vests the ZHB with exclusive jurisdiction to hear Objectors' declaratory judgment action. Specifically, the Township made the following objections:

3. Defendant [Township] preliminarily objects pursuant to: a) Rule 1028(a)(1) and (7), in that the Court lacks jurisdiction over the subject matter of the action and Plaintiffs have failed to exercise and exhaust statutory remedies; b) Rule 1028(a)(2), in that the Complaint fails to confirm [sic] to law or rule of court; c) Rule 1028(a)(3), in that the complaint lacks sufficient specificity; d) Rule 1028(a)(4), as to Count II, in that Count II is legally insufficient;

and e) Rule 1028(a)(2)(3) and (4), in that Count III is legally insufficient.

. . . .

Township's Preliminary Objections to the Complaint, June 9, 2008, No. 3 at 3; R.R. at 43a.

The trial court sustained the Township's preliminary objections. The trial court found that, for challenges to the substantive validity of Ordinance provisions, it did not have subject matter jurisdiction because the MPC vests jurisdiction in the Township Board of Supervisors and/or the ZHB. Court of Common Pleas of Bucks County, Memorandum Opinion and Order, September 29, 2008, at 3–4. Specifically, the trial court concluded:

> Generally, Plaintiffs [Objectors] must demonstrate the inadequacy of local remedies to justify the exercise of the court's equitable powers. . . . Plaintiffs do not assert that there is no statutory remedy available but instead asserts (sic) that those available remedies are inappropriate due to the Oil and Gas [Act] preemption. The Oil and Gas [Act] exception for the MPC leads to the inescapable conclusion that the municipal authorities should make the first determination as to which of it ordinances the municipality seeks to enforce. Only then will we know whether the nature of the restrictions are in fact in the zone of preemption.

*Id.* The trial court concluded it lacked jurisdiction and that Objectors failed to exhaust available statutory remedies. The trial court found it unnecessary to address the Township's additional preliminary objections. This appeal followed.

On November 21, 2008, the trial court issued an opinion pursuant to Pa. R.A.P. 1925(a), and stated that it did not have jurisdiction because Objectors' claims failed to meet the requirements of the Declaratory Judgment Act, 42 Pa.C.S. §§ 7531–7541, since there was no case or controversy between the parties.[4]

### I. Equity Jurisdiction

■■■ Initially, Objectors contend[5] that the trial court erroneously dismissed the Objectors' complaint on the basis of subject matter jurisdiction. Objectors argue, however, that the trial court has equity jurisdiction over the Objector's declaratory judgment action because the Ordinances operationally regulate oil and natural gas activities, which exceeds the scope of traditional land use controls.

■■ In general, a court's equitable jurisdiction may be inferred under the traditional powers of the court to prevent or restrain "the commission or continuance of acts contrary to law and prejudicial to the interests of the community, or rights of individuals." *Zeigenfuse v. Boltz,* 401 Pa.

4. Following the trial court's dismissal of Objectors' complaint, Objectors initiated a substantive challenge to the Ordinance before the ZHB raising the same three claims as raised in the declaratory judgment complaint: preemption, substantive due process and regulatory taking. The ZHB held a hearing on November 12, 2008. On February 9, 2009, the ZHB determined that the Township Ordinance Nos. 126 and 129 are "invalid, unconstitutional and unenforceable," in part, because they are preempted by the Act. The Township appealed the ZHB's decision to the trial court.

5. When reviewing orders disposing of preliminary objections, our standard is clear: well-pled factual averments of the complaint are admitted; conclusions of law are not. *Kimmel Township Taxpayers Association v. Claysburg Kimmel School District,* 146 Pa.Cmwlth. 57, 604 A.2d 1149 (1992). When preliminary objections raise a question of subject matter jurisdiction "[t]he trial court's function is to determine whether the law will bar recovery due to a lack of subject matter jurisdiction." *Id.* at 1152 (quoting *In Re Ordinance No. 1–9–86,* 116 Pa.Cmwlth. 640, 542 A.2d 1051, 1053 (1988)).

365, 372, 164 A.2d 663, 667 (1960) (citations omitted).

■ Section 909.1(a) of the MPC, added by Section 87 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10909.1(a)(1), generally vests exclusive jurisdiction in a zoning hearing board to hear challenges to the substantive validity of land use ordinances. Objectors, however, argue that the current controversy falls squarely within a recognized exception which provides that when an ordinance containing "operational regulations" is substantively challenged, the challenge does not "fall within the category of land use controls accomplished by zoning" and thus, "a need to exhaust zoning remedies under the MPC [i.e. challenging the ordinances before a zoning hearing board] is clearly not present." *Plymouth Township v. Montgomery County*, 109 Pa.Cmwlth. 200, 531 A.2d 49, 53 (1987). It is well-settled that a court of common pleas has jurisdiction in equity to hear a challenge to an ordinance containing "operational regulations." *Id.*

■ Here, in analyzing the jurisdictional inquiry this Court must determine whether the challenged provisions involve "*operational* ordinance provisions in addition to, and distinct from, *zoning* ordinance provisions." *Klein v. Shadyside Health Education and Research Corporation and City of Pittsburgh*, 164 Pa. Cmwlth. 546, 643 A.2d 1120, 1121 (1994). In other words, this Court "must recognize statutory and judicial distinctions between ordinance provisions governing *where* the location of the facility may be (zoning provisions) and, on the other hand, *how* it may be technically designed and operated (operational regulations)." Plymouth Township, 531 A.2d at 50. This Court is mindful that zoning is "the legislative division of a community into areas in each of which

only certain designated uses of land are permitted." *Best v. Zoning Board of Adjustment of the City of Pittsburgh*, 393 Pa. 106, 110, 141 A.2d 606, 609 (1958). In contrast, zoning is not the regulation of the fine details of various activities conducted on the land in the community. *Land Acquisition Services, Inc. v. Clarion Board of Commissioners*, 146 Pa.Cmwlth. 293, 605 A.2d 465, 470 (1992). In addressing this question, this Court must review and compare the challenged ordinance provisions in the current controversy against zoning ordinances analyzed in prior decisions.

### a. Ordinances that Contain Operational Provisions

This Court has previously analyzed ordinance provisions and distinguished between operational and zoning ordinance provisions to determine the appropriateness of equity jurisdiction. In Plymouth Township and *Pennsylvania Coal Company, Inc. v. Township of Conemaugh*, 149 Pa.Cmwlth. 22, 612 A.2d 1090 (1992), this Court found that the challenged ordinances contained operational provisions, consequently, the zoning hearing board did not have exclusive jurisdiction.

In *Plymouth Township*, Plymouth Township brought an action against Montgomery County (county) for declaration that the county's proposed waste disposal plant would violate Plymouth Township ordinances and for an injunction to bar further construction. *Id.* at 50. The county counterclaimed, seeking a declaration that portions of the ordinances were preempted by the Solid Waste Management Act.[6] *Id.* The Court of Common Pleas of Montgomery County found for the county.

In *Plymouth Township*, one of the challenged ordinances was not an integral part

---

**6.** Act of July 7, 1980, P.L. 380, *as amended,* 35 P.S. §§ 6018.101–6018.1003.

of Plymouth Township's zoning scheme, but regulated the processing and disposal of waste by requiring permits and user fees per ton for waste processed, regulated the disposal of waste at the facility and detailed how the waste was transported, including, route, vector control, vehicle size and emergency contingency plans. *Id.* at 52.

Next, there was a zoning ordinance amendment that authorized a refuse disposal plant only as a conditional use which required approval of the Plymouth Township council and limited height and bulk. An additional zoning amendment described the resource recovery district of some thirty-six acres. *Id.*

Additionally, there was a Plymouth Township ordinance section that subjected the proposed facility to air pollution control regulation and another section that required a permit for connection of the refuse disposal facility to the sewer authority's line. *Id.*

On appeal, this Court found that the ordinances contained "operational regulations" in addition to traditional zoning regulations. *Id.* at 53. Further, in *Plymouth Township*, this Court concluded that where a township inextricably connected zoning provisions with operation regulations, the administrative process was inadequate and equity jurisdiction was appropriate in the common pleas court to achieve a prompt and unified resolution. *Id.* at 53.

Similarly, in *Pennsylvania Coal* this Court reiterated its holding in the *Plymouth Township* decision. In *Pennsylvania Coal,* owners of land used for surface mining brought a declaratory judgment action against Conemaugh Township and challenged an amendment to Conemaugh

Township's zoning ordinance as preempted by the Surface Mining Conservation and Reclamation Act[7] and the Noncoal Surface Mining Conservation and Reclamation Act.[8] Conemaugh Township preliminarily objected to the complaint, and argued that the Court of Common Pleas of Cambria County lacked subject matter jurisdiction because such jurisdiction was vested exclusively in the local zoning hearing board under the MPC. *Id.* at 1092. The Court of Common Pleas of Cambria County sustained Conemaugh Township's preliminary objections to subject matter jurisdiction and dismissed the complaint.

The challenged provisions of the Ordinance "regulate[d] the operation of surface coal mining in the Township in addition to location and physical configuration." *Id.* at 1092. Surface mining applicants were required to submit to Conemaugh Township information already required to be submitted to the Department of Environmental Resources in order to obtain a permit. The challenged provisions also regulated "the operation of other activities which are appropriate aspects of surface mining" that included, construction of structures within specified distances of streams or wetlands; timber harvesting; extraction of coal; excavations and fills; storm water management; and blasting. *Id.* at 1092–93.

On appeal, the land owners argued that the Court of Common Pleas of Cambria County erred in holding they had an adequate statutory remedy, which they had pursued through a substantive challenge to the ordinances before the zoning hearing board, because the challenged provisions extensively regulated the operation of surface coal and non-coal mining and reclamation operations, such that the zon-

**7.** Act of May 31, 1945 P.L. 1198, *as amended,* 52 P.S. §§ 1396.1–1396.31.

**8.** Act of December 19, 1984, P.L. 1093, *as amended,* 52 P.S. §§ 3301–3326.

ing hearing board did not have exclusive jurisdiction. *Id.* at 1092. This Court agreed.

Relying on *Plymouth Township,* this Court in *Pennsylvania Coal* noted that "courts have jurisdiction to review and negate local ordinances regulating the *operation* of waste disposal facilities which are qualitatively different from traditional zoning ordinances regulating the *location* of these facilities." Pennsylvania Coal, 612 A.2d at 1092. This Court found that the challenged provisions seeking to regulate surface mining operations were "more extensive than the traditional land use controls accomplished by zoning" such that the common pleas court erred in holding that the ZHB had exclusive jurisdiction over all challenges to the ordinance. *Id.* at 1093.

### b. *Ordinances that do not Contain Operational Provisions*

Following *Pennsylvania Coal,* this Court again held in *Klein,* that equity jurisdiction is available when an ordinance with operational restrictions is challenged, and this further defined the exception. In *Klein,* residential land owners filed an action in equity and an ancillary claim for declaratory judgment action in the Court of Common Pleas of Allegheny County and challenged the construction, installation and enlargement of a helicopter landing facility. *Klein,* 643 A.2d at 1121. The City of Pittsburgh filed preliminary objections contending that the MPC gave the zoning hearing board exclusive jurisdiction over the challenge. The Court of Common Pleas of Allegheny County sustained the preliminary objections and dismissed the complaint on the basis that the land owners had an adequate remedy through their statutory zoning hearing board appeal. *Id.*

In *Klein,* the zoning ordinance added a new section to the Zoning Code that addressed helicopter landing areas. Regulations were placed on flight paths, proximity to schools, residential uses and other potential landing areas. Helicopter landing areas were not permitted on rooftops in commercial districts, were required to be set back fifty feet from property lines and a log of helicopter arrivals and departures was required. *Id.* at 1123–24. Additionally, landing areas in specific zoning districts required an environmental report that addressed several environmental categories.

On appeal, this Court relied on *Plymouth Township* and *Pennsylvania Coal,* to find that the City of Pittsburgh's helicopter facility zoning provisions "focus[ed] primarily upon the matter of location rather than operational process." Id. at 1125. This Court found that *Klein* was distinguishable from *Plymouth Township* and *Pennsylvania Coal.* In contrast to traditional zoning regulations, such as location, "spacing and dimensional requirements" as in *Klein, Plymouth Township* involved regulation that "set out to govern the way in which refuse disposal facilities would be operated" and *Pennsylvania Coal* involved regulations of the "ongoing process of surface mining." *Klein,* 643 A.2d at 1124–25.

### c. *Challenged Ordinance Provisions*

■ After careful review of the ordinance provisions analyzed in *Plymouth Township, Pennsylvania Coal,* and *Klein,* this Court must conclude that the presently challenged Ordinances do not contain operational provisions. Therefore, the trial court correctly concluded it lacked jurisdiction over the challenge.

■ In the current controversy, one of the challenged provisions identified zoning districts within the Township where oil and natural gas drilling is a permitted use.

Section 02(2) of Ordinance No. 129 at 2; R.R. at 32a. Such a provision is a quintessential land use control logically connected to land use planning. Regulating whether a particular use is permitted in a particular location is the essence of zoning. *Swade v. Zoning Board of Adjustment of Springfield Township*, 392 Pa. 269, 270, 140 A.2d 597, 598 (1958).

Next, the additional challenged Ordinance provisions establish setback requirements in relation to public buildings, public or private streets, property lines, and properties designated as landfills or properties that contain hazardous substances. Section 01 6.a.(5)-(6) of Ordinance No. 126 at 3–4; R.R. at 24a–25a; Section 07(12) of Ordinance No. 126 at 3; R.R. at 33a. Similarly, there are provisions of the Ordinances regarding lot size and proximity to threatened or endangered species or crucial habitations such that there may be no habitat disturbance. Section 01 6.a.(9) and 6.d.(1) of Ordinance No. 126 at 4–5; R.R. at 25a–26a. Additionally, the Ordinances limit the number of well pad sites permitted on one property. Section 7(10) of Ordinance No. 129 at 3; R.R. at 33a. Such regulations are more akin to those set forth in *Klein* because they focus primarily upon the matter of location and size, indicative of traditional zoning concerns, rather than operational processes.

Additionally, the challenged Ordinance provisions provide environmental protections. The Ordinances require all oil and natural gas activities to meet flood plan provisions and operators are required to submit a wetland report approved by the U.S. Corps of Engineers. Section 01 6.e.(3) and 6.h.(1) of Ordinance 126 at 5, 7; R.R. at 26a, 28a. As explained in *Klein*, "[r]equirements of environmental reports are logically related to the zoning decision of allowing or disallowing the facility to be located in a particular site in relation to

other components of the ... landscape." *Klein*, 643 A.2d at 1125. Thus, this Court fails to see how such regulations are "more extensive than the traditional land use controls accomplished by zoning." *Pennsylvania Coal*, 612 A.2d at 1093.

Additional provisions of the Ordinances require plans for public safety and financial security and require operators to file performance bonds. Section 10(7) and 13(6) of Ordinance No. 129 at 5–6; R.R. at 35a–36a. Again, this Court is not persuaded that such provisions are operational regulations. In *Plymouth Township*, the zoning ordinances regulated "how the refuse disposal plant should be technically designed and conducted with respect to capacity and other specifications. . . ." *Id.* at 53. The same parallel cannot be drawn in the current controversy because the challenged provisions of the Ordinances do not relate to how gas and drilling operations are to be designed and operated as was the case in *Plymouth Township*.

 Further, any operational ordinance provisions must be in addition to, and distinct from, zoning ordinance provisions. *Klein*, 643 A.2d at 1121. Unlike in *Pennsylvania Coal*, where the challenged provisions clearly regulated the operation of surface coal mining, this Court is not persuaded that the challenged provisions of the Ordinances clearly regulate the operation of oil and gas drilling in the Township in addition to location and physical configuration. Here, the challenged provisions are part of the land use process and not unique operational regulations that become pertinent only after land use approval is granted. Consequently, this Court is of the opinion that the challenged Ordinances are not operational regulations.

 A decision whether or not litigation is "viable in an equity proceeding depends on whether it involves operational regulations so inextricably intertwined

with zoning regulations that a statutory zoning appeal proceeding is inadequate for resolution of the case." *Klein,* 643 A.2d at 1121. Because the challenged provisions are neither inextricably linked nor intended to extensively regulate oil and gas drilling within the Township, Objectors have an adequate statutory remedy for resolution of the case pursuant to the MPC. Further, "[i]t is a cornerstone principle in equity that when the legislature provides a statutory remedy, equity has no place. An action in equity cannot be used to adjudicate zoning questions." *Borough of Trappe v. Longaker,* 120 Pa.Cmwlth. 180, 547 A.2d 1311, 1313 (1988).

In accord with *Klein,* faced with zoning issues presented by the provisions in the current controversy and the challenges raised by Objectors, the use of the statutory zoning appeal procedure set forth by the MPC is exclusive. *Klein,* 643 A.2d at 1125 (citing *Knup v. Philadelphia,* 386 Pa. 350, 126 A.2d 399 (1956)). As such, the MPC's exclusive procedures control and unless and until the procedures are exhausted, the trial court appropriately declined to exercise equitable jurisdiction. *See Commonwealth· of Pennsylvania v. 6969 Forest Avenue,* 713 A.2d 701, 705 (Pa.Cmwlth.1998) (citing *First Federal Savings & Loan Association v. Swift,* 457 Pa. 206, 321 A.2d 895 (1974) (The court of common pleas does not have authority to grant equitable relief if the party failed to pursue a "mandatory and exclusive statu-

tory remedy provided by the legislature.")).

Accordingly, this Court affirms.[9]

## ORDER

AND NOW, this 12th day of May, 2009, the order of the Court of Common Pleas of Bucks County in the above-captioned matter is hereby affirmed.

---

9. Objectors also argue that the trial court erred in determining the ZHB should hear the declaratory judgment complaint, which raises constitutional claims, when Pennsylvania law holds that a ZHB cannot adjudicate constitutional challenges to its own ordinances. Additionally, Objectors contend that the trial court has jurisdiction to hear the action under the Declaratory Judgment Act and argue that the trial court erred in determining that the

complaint presented no "case or controversy" when the Ordinances unlawfully thwarted Objectors' development of its natural gas leasehold interest.

Because of this Court's resolution of the first issue, holding that the trial court did not have jurisdiction in equity over the challenge, we need not review the merits of Objectors' additional assertions.