# Geryville Materials, Inc. v. Planning Commission of Lower Milford Township.

*Stephen B. Harris*, for appellant.
*David M. Backenstoe*, for appellee.
*Mark S. Cappuccio*, for intervenors.

FORD, *J.*, June 26, 2012—Geryville Materials, Inc. (appellant) filed a notice of appeal from a decision of the Planning Commission of Lower Milford Township, Pennsylvania (commission), which is the appellee in this matter. The decision was announced at a meeting of the commission on October 3, 2011, and it was explained in a letter dated October 14, 2011, from Commission's counsel to appellant. In the decision, the commission denied appellant's preliminary plan for the development of a stone quarry. Because the commission acted in accord with the law, its decision is sustained and the appeal is denied.

## Factual and Procedural History

Appellant is the owner of a 628.48 acre property in Lower Milford Township (township). Township is one of the intervenors in this case. A stream and two public roads, West Mill Hill Road and Buhman Road, cut through this land.

On June 18, 2009, appellant submitted an application to the commission for approval of a preliminary land development plan (preliminary plan). Through the preliminary plan, appellant sought permission to develop a non-surface, stone extraction quarry on a 84.56 acre portion of its 628.48 acres. Appellant proposed that the quarry be located on the north side of West Mill Hill Road, with a water infiltration facility on the west side of West Mill Hill Road. Sections 241.2 and 241.4 of the Subdivision and Land Development Ordinance of Lower Milford Township (SALDO) direct that the commission review and approve or deny all preliminary land development plans in the township.

On August 3, 2009, the commission held its first meeting on appellant's preliminary plan. The commission conducted many public meetings on the project over the next two years. Throughout this process, appellant made revisions to the preliminary plan, with submission of its last revision to the commission on October 11, 2010.

Beginning in May of 2011, township actively opposed appellant's preliminary plan at the commission meetings. From May through July of 2011, township presented testimony to the commission that appellant's plan failed to adhere to various sections of the Lower Milford Township Zoning Ordinance (ordinance) and the SALDO. Specifically, the township contended that appellant's plan contained improper site capacity and natural resource protection calculations and violated the prohibition against partial subdivision of land. Township concluded the presentation of its evidence at the public meeting held on July 11, 2011.

The commission held its next public meeting on appellant's preliminary plan on August 1, 2011. However, appellant did not appear for this meeting. Instead, appellant submitted a written stipulation to the commission indicating that appellant agreed to an extension of the time period for the commission to consider the preliminary plan. (Appellant executed the stipulation to avoid a "deemed approval" of the preliminary plan pursuant to 53 P.S. § 10508(3).) Appellant consented to the commission's entering a decision on the preliminary plan by a date no later than October 31, 2011.

At a public meeting conducted on September 12, 2011, the commission again offered appellant the opportunity to present rebuttal evidence. However, counsel for appellant informed the commission that appellant would not be offering any rebuttal witnesses. Instead, counsel for appellant notified the commission that he would only be making legal argument in opposition to township's position. Because the evidence was completed on the preliminary plan, the commission asked each party to submit a written memorandum on the issues. Finally, the commission announced at this meeting that it was scheduling a meeting for September 28, 2011, to publicly deliberate on the issues surrounding the preliminary plan.

At the September 28, 2011, public meeting, the commission heard arguments on the preliminary plan, in addition to the memoranda that had been submitted. After considerable deliberation, the commission decided that it would enter a decision at the next public meeting to be held on October 3, 2011.

At the start of the public meeting on October 3, 2011,

appellant submitted a written request to the commission seeking another extension of time for the commission to consider the preliminary plan. The commission denied the extension request and resumed its deliberations. At the conclusion of the October 3 meeting, the members of the commission voted unanimously to deny appellant's preliminary plan. In doing so, the commission determined that the plan: (1) used improper site capacity calculations under section 314.22 of the SALDO and Section 472.d of the ordinance; (2) proposed an impermissible partial land development under Section 318 of the SALDO; and (3) did not comply with the natural resource protection standards listed at Sections 470, 471 and 472 of the ordinance.

On November 10, 2011, appellant filed the present "notice of appeal and petition for review of denial of land development plan." In this appeal, appellant challenges the commission's October 3, 2011, denial of its preliminary plan. The commission filed a reply to the appeal on December 1, 2011.

On November 30, 2011, township, acting under 53 P.S. § 11004-A, filed a notice of intervention in support of the commission's denial of appellant's preliminary plan.

On January 23, 2012, an order was entered accepting a stipulation allowing Lori Sickenberger and Don Weinberger to intervene in this appeal. Ms. Sickenberger and Mr. Weinberger are Township residents who oppose appellant's proposed quarry.

On March 30, 2012, the attorneys made excellent arguments on the appeal. At argument, each party agreed that the court's review was restricted to the record developed before the commission. No additional evidence

was presented at the argument. Appellant, the commission and township had earlier filed very helpful briefs in support of their respective positions. Ms. Sickenberger and Mr. Weinberger filed a brief adopting the arguments of the commission and township.

Discussion and Conclusions of Law

Appellant argues that the commission's decision to deny the preliminary plan must be overruled for three primary reasons. First, appellant contends that the natural resource protection standards contained in sections 470, 471 and 472 of the ordinance are preempted by state law and are therefore unenforceable against appellant. Second, appellant argues that the commission erred in concluding that appellant's site capacity and natural resource protection calculations violated the SALDO and ordinance. This argument assumes that the natural resource protection standards are not preempted. Third, appellant asserts that the commission violated its duty of good faith in acting on appellant's preliminary plan. For the reasons that follow, all of appellant's contentions lack merit.

In a land use appeal where the court does not take additional evidence, the court's review is limited to whether the local agency committed an abuse of discretion or error of law. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 554, 462 A.2d 637, 639 (1983); and 53 P.S. § 11005-A. The court may not substitute its judgment for that of the local agency unless the agency manifestly abused its discretion. *Nascone v. Ross Township Zoning Hearing Board*, 81 Pa.Cmwlth. 482, 486, 473 A.2d 1141, 1142 (1984). An abuse of discretion occurs when a local agency's findings are not supported by

substantial evidence. *Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh,* 547 Pa. 163, 167, 689 A.2d 225, 227 (1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Lantos v. Zoning Hearing Board of Haverford Township,* 153 Pa.Cmwlth. 591, 597, 621 A.2d 1208, 1211 (1993).

## Preemption

Appellant argued before the commission that the natural resource protection standards listed at sections 470, 471 and 472 of the ordinance were preempted by Pennsylvania's Non-coal Surface Mining Conservation and Reclamation Act (Mining Act), 52 P.S. §§3301-3326. Among other things, the Mining Act grants the Pennsylvania Department of Environmental Protection (DEP) the authority to regulate the operation of Non-coal surface mining in the commonwealth. The Commission rejected appellant's preemption argument and applied the natural resource protection provisions of the ordinance in reviewing appellant's preliminary plan. Appellant repeats this argument in this appeal.

Under the Mining Act, "all local ordinances and enactments purporting to regulate surface mining are hereby superseded." 52 P.S. § 3316. The case law interpreting this language has differentiated between zoning ordinances, which regulate the location and physical configuration of mining operations, and those which directly regulate and control the operation of mines. Only the latter is subject to preemption. *Pennsylvania Coal Company, Inc. v. Township of Conemaugh,* 149 Pa.Cmwlth. 22, 26, 612 A.2d 1090, 1092- 93 (1993).

In addressing the subject of preemption, the commonwealth court held that, as a general proposition, zoning ordinance provisions seeking to protect and preserve the environment constitute traditional zoning regulations. *Arbor Resources, LLC v. Nockamixon Township*, 973 A.2d 1036, 1046 (Pa.Cmwlth. 2009); see also 53 P.S. § 10603(b) (1), (3) and (5). Examples of environmental ordinances not subject to preemption are those which "regulate lot size and proximity to threatened or endangered species or crucial habitats" and those which require the production of environmental reports showing compliance with federal environmental regulations. *Arbor Resources, LLC v. Nockamixon Township*, 973 A.2d at 1046 (Pa. Cmwlth. 2009). Further, the Commonwealth Court has stated:

> While the DER (Department of Environmental Resources, the predecessor to the DEP) is empowered to protect the environment, it is not a zoning board. If we were to say that a grant of a permit by the DER removes all environmental concerns for an industry to operate in a particular district, we would effectively chill the rights of citizens to come forward with evidence regarding their health, safety and welfare, and thus, would emasculate the purpose of a zoning board to resolve these issues.

*Abbey v. Zoning Hearing Board of Borough of East Stroudsburg*, 126 Pa.Cmwlth. 235, 245-46, 559 A.2d 107, 112 (1989).

Here, the sections of the ordinance which appellant contends are preempted do not regulate the operation of mines. On the contrary, the challenged sections compel the preservation of natural resources. Specifically, section

471(d) of the ordinance limits the amount of woodlands that can be destroyed in a land development project and requires a developer to replace removed trees in some instances. Section 471(e) mandates that any land development which alters a watercourse must be based on a design approved by the township and, if required, the DEP. Section 471(f) prohibits the alteration of designated wetlands except in instances where required state and federal permits have been obtained. Finally, section 471(g) limits the amount of wetlands that can be altered by a land development project. Because these sections of the ordinance operate to preserve natural resources and do not regulate the conduct of mining operations, the commission properly concluded that they are not preempted by the Mining Act.

## Site Capacity and Natural Resource Protection Calculations

The commission, in interpreting the ordinance and SALDO, found that appellant's property constituted three separate parcels for purposes of the required site capacity and natural resource protection analyses because of the roads which cut through the property. Thus, the commission concluded that appellant's preliminary plan had to contain separate analyses for each of the three parcels. However, the site capacity and natural resource protection calculations contained in appellant's preliminary plan analyzed appellant's 628.48 acre property as one large parcel only. The commission cited appellant's failure to analyze the property as three separate parcels as a reason for denying the preliminary plan. On appeal, appellant maintains that its property constitutes one parcel under the provisions of the ordinance and SALDO and that the commission committed an error of law in determining otherwise.

For the reasons that follow, appellant's contention lacks merit.

"It is well-settled that the interpretation and application of ordinance terms are within the sole discretion of the [local agency charged with applying the ordinance] and will not be disturbed absent a demonstration that an abuse of discretion or an error of law was committed." *Morris v. South Coventry Township Board of Supervisors*, 836 A.2d 1015, 1023 (Pa.Cmwlth. 2003) (citation omitted). Also,

> [w]hile it is true that zoning ordinances are to be liberally construed to allow the broadest possible use of land, it is also true that zoning ordinances are to be construed in accordance with the plain and ordinary meaning of their words. (Citation omitted.) Further, zoning ordinances should be construed in a sensible manner. (Citation omitted.)

*Zappala Group, Inc. v. Zoning Hearing Board, Town of McCandless*, 810 A.2d 708, 710 (Pa.Cmwlth. 2002).

In determining the proper method of performing site capacity and natural resource protection calculations for the proposed quarry project, the commission had to interpret section 314.22 of the SALDO and section 472.d of the ordinance. Section 314.22 of the SALDO requires that all land development plans submitted to the commission contain a natural features map which depicts certain natural features calculations. Specifically, section 314.22 reads:

> Site capacity calculations per section 472.d of the zoning ordinance. All measurements used for these calculations shall be indicated for each resource on the

natural features map.

Section 314.22 refers to section 472.d of the ordinance, the relevant portions of which are:

Site capacity calculation. Each site is unique; it has physical features which are rarely duplicated precisely on another site. Portions of some sites may not be usable. The portion of this subsection is to determine the appropriate intensity of use to which a specific tract may be put. For each tract, the following calculation shall be submitted by the developer.

(1) Base site area: Certain portions of tracts may not be usable for the activities proposed for the site; these shall therefore be subtracted from the site area to determine the base site area.

(c) Subtract — land which is not contiguous; i.e., a separate parcel which does not abut or adjoin, nor share common boundaries with the rest of the development; and/or land which is cut off from the main parcel by a road, railroad, existing land uses, and/or major stream so as to serve as a major barrier to common use, or so that it is isolated and unavailable for building purposes.

In ascertaining the meaning of these provisions, the commission focused on the plain language in section 472.d(1)(c), which mandates that "land which is cut off from the main parcel by a road" is subtracted from a base site area upon which site capacity and natural resource protection analyses are to be conducted. The commission reasoned that the notion that bisection by a road creates distinct parcels of land was consistent with the definition of "lot" contained in the ordinance. That definition reads:

*A parcel of land held in one ownership not divided by a public street.* A lot, for purposes of this ordinance, shall also mean that total plot in single ownership, whether or not it is made up of one or more contiguous parcels and whether or not such contiguous parcels were acquired at the same time or at different times. Upon the acquisition of contiguous parcels, they, together with the original parcel, shall be considered as a single lot.

(Emphasis added).

Furthermore, the commission relied on township precedent in interpreting section 314.22 of the SALDO and section 472.d of the ordinance. Specifically, at the public meeting on September 28, 2011, the commission considered a June 11, 1993, letter from attorney Edward McGee, then the township's solicitor, whose letter was used to record a determination made by the township board of supervisors. The letter explained:

At the meeting held on June 10, 1993, the board of supervisors decided to change the policy where a piece of real estate has a road running through it. The supervisors have decided that, in the future, a parcel of land which has a public street dividing it shall be considered as two lots.

Based on all of the above, the commission interpreted the ordinance and SALDO to mean that public roads passing through a property create separate parcels within that property for site capacity and natural resource protection calculations. The commission noted that two public roads, West Mill Hill Road and Buhman Road, cut through appellant's property. These roads divided

appellant's property into three separate parcels so that appellant was required to perform site capacity and natural resource protection calculations on each of the three lots.

Appellant relies on the second sentence in the definition of "lot" contained in the ordinance as support for its position that its entire 628.48 acre property should be treated as one parcel for the required calculations. That sentence indicates that a" lot...shall also mean the total plot in single ownership whether or not it is made up of one or more contiguous parcels...." Appellant argues that because it owns the entirety of the 628.48 acres, the property should be considered one lot regardless of the roads. Appellant contends that the commission committed an error of law by not adopting this interpretation.

The commission did not commit an error of law. First, the commission acted reasonably in basing its interpretation of the provisions of the ordinance and SALDO on the ordinary meaning of their language. Both section 472.d of the ordinance and the definition of "lot" contained in the ordinance clearly state that a public road severs one parcel of land from another, thereby creating separate parcels. No language in the second sentence in the definition of "lot" directly contradicts this clear interpretation. Second, the commission adhered to township precedent by relying upon the board's prior determination that road division of property creates separate lots (as recorded in the June 13, 1993, letter prepared by attorney McGee). Finally, to the extent that one may perceive any contradiction or confusion in the ordinance's definition of "lot," discretion is given to the commission for a reasonable interpretation of that provision.

With the determination that the commission properly concluded that appellant should have analyzed the property as three parcels and not one, it is unnecessary to reach the question of whether an analysis of the land as one parcel would have met the applicable standards. (township, in opposing appellant's preliminary plan, presented several expert witnesses who testified before the commission that appellant's plan failed to meet the standards of the ordinance, even when site capacity and natural resource protection calculations were based on an analysis of appellant's 628.48 acre property as one parcel of land.)

## Good Faith

Appellant argues that the decision to deny its preliminary plan should be reversed because the commission did not act in good faith. Appellant lists examples of the commission's alleged failure to act in good faith at pages 16 through 19 of its brief. These claims lack merit.

Appellant contends that the commission had a duty to offer appellant guidance as to the proper method of computing site capacity and natural resource protection calculations for the preliminary plan. Instead of offering such guidance, the appellant says the commission refused to draw attention to defects in its method of calculation until the point that the preliminary plan was denied without the opportunity to amend. Contrary to appellant's assertion, the record shows that appellant received adequate notice of these deficiencies in its preliminary plan.

The commonwealth court has held that,

[a] municipality has a legal obligation to proceed in good faith in reviewing and processing development

plans. The duty of good faith includes discussing matters involving technical requirements or ordinance interpretation with an applicant, and providing an applicant a reasonable opportunity to respond to objections or to modify plans where there has been a misunderstanding or difference of opinion.

*Highway Materials, Inc., v. Board of Supervisors of Whitemarsh Township*, 974 A.2d 539, 544 (Pa.Cmwlth. 2009) (quoting *Raum v. Board of Supervisors of Tredyffrin Township*, 29 Pa.Cmwlth. 9, 48, 370 A.2d 777, 798 (1977)).

Township engineer, Cowan Associates, Inc., reviewed appellant's original preliminary plan shortly after its submission to the commission on June 18, 2009. In letters to appellant dated July 29, 2009, and October 1, 2009, the engineer suggested that appellant should consolidate the multiple tax parcels on its property into one parcel for purposes of the required calculations in the preliminary plan. Thereafter, appellant submitted and presented a preliminary plan which contained site capacity and natural resource protection calculations based on an analysis of appellant's property as one parcel of land. (The process of appellant's presentation of its evidence on its preliminary plan to the commission covered the period of August of 2009 through June of 2011.) Then, on July 11, 2011, township presented the testimony of Charles Schmehl, the township's planner. Mr. Schmehl testified that, pursuant to the provisions of the Ordinance and SALDO, appellant's 628.48 acre property constituted three separate parcels for purposes of site capacity and natural resource calculations. This means that appellant had notice of a

potential deficiency in the calculations in its preliminary plan approximately three months prior to the commission's denial of the preliminary plan on October 3, 2011.

Over the three months following the July 11, 2011, public meeting, the commission granted appellant ample opportunity to present evidence in opposition to Mr. Schmehl's testimony and to challenge township's interpretation of the ordinance and SALDO. Specifically, appellant had the opportunity to present rebuttal evidence at the public meetings held on August 1, September 12, and September 28, 2011. Appellant chose not to appear at the August 1 public meeting. Further, at the September 12 meeting, counsel for appellant informed the commission that appellant would not present any evidence to rebut the testimony of Mr. Schmehl (or any township witness). Appellant made the strategic decision to stand by its original calculations and solely present legal argument in opposition to the township's and Mr. Schmehl's interpretation of the ordinance and SALDO. Appellant was at liberty to file an amended preliminary plan which contained calculations in conformity with the township's position, but it chose not to do so.

The above history does not show bad faith by the commission. First, in acting on the preliminary plan after painstaking proceedings over many months, the commission was not bound by any views that may have been expressed by the township engineer to appellant. The township engineer had no formal affiliation with or connection to the commission. It was the independent duty of the commission to ensure that all development in

the township conformed to the ordinance and SALDO. Second, appellant was put on notice of the potential defects in its site capacity and natural resource calculations approximately three months prior to the final vote on the preliminary plan. The commission, acting in accord with its duty set forth in *Highway Materials, Inc.*, 974 A.2d at 544 (Pa. Cmwlth. 2009), afforded appellant the opportunity to respond to the objections of the township, but it chose to stand on its original presentation.

Appellant contends that the commission showed bad faith by refusing to grant the application for an extension (for the commission to render a decision) presented by appellant at the start of the public meeting held on October 3, 2011. This contention lacks merit. As is described above, the commission afforded appellant numerous opportunities to make its presentation as it saw fit. At some point, the matter had to be decided. Further, the commission originally scheduled deliberations on the preliminary plan for September 28, 2011. It was conceivable that the commission would actually vote on the preliminary plan on that date. At no time before or during the September 28 meeting did Appellant request more time to present evidence or argument. The commission delayed voting on the preliminary plan until the October 3, 2011, meeting only because it determined that further deliberations were necessary. The commission reasonably exercised its discretion in denying appellant's eleventh hour extension request made at the October 3 meeting.

Appellant next argues that the commission showed bad faith by denying the preliminary plan instead of granting a

conditional approval. However, where a preliminary plan does not comply with substantive requirements of a zoning ordinance, a local agency may, in its discretion, deny the plan or grant a conditional approval. *CACO Three, Inc., v. Board of Supervisors of Huntington Township*, 845 A.2d 991, 994 (Pa.Cmwlth. 2004). Here, because the commission properly found that appellant's preliminary plan violated provisions of the ordinance and SALDO, it acted within its discretion in denying the plan without the opportunity to amend.

Appellant claims that the commission improperly engaged in numerous ex parte communications with third parties about the preliminary plan. However, under sections 234 and 235 of the SALDO, the commission is required to contact multiple government agencies and officials affected by the submission of a preliminary plan. All of the communications challenged by appellant were authorized by the SALDO. This claim lacks merit.

Appellant complains that the commission inspected appellant's property without the knowledge or consent of appellant. Appellant overlooks paragraph 4 of appellant's application for review of the preliminary plan submitted to the commission reads:

> Owner permission: I hereby give my consent to this subdivision/land development subdivision and permission for the township agent(s) to enter the property for site investigation purposes.

David S. Rittenhouse, President, Owner (of Appellant)

Finally, appellant criticizes the "adversarial" nature of

the public meetings on the preliminary plan. Appellant accurately notes that members of the public were allowed to voice their opposition to the preliminary plan at the meetings. The objection appears to stem from (what appellant considered) vociferous comments by public attendees. Appellant alleges that the commission was improperly influenced by this public participation. Under Pennsylvania's Sunshine Act, 65 Pa.C.S. §§701-716, the public has the right to participate in meetings of local agencies and voice opposition to proposals pending before such agencies. Moreover, I find no evidence in the transcripts of improper influence on the commission by members of the public. Statements from citizens appear in several of the transcripts. They seem to have been made with propriety.

Other Allegations of Error

Because the commission properly denied appellant's preliminary plan for the reasons I explained, I do not reach appellant's challenge to the commission's finding that appellant violated section 318 of the SALDO by proposing an impermissible partial land development. Where a local agency's denial of a proposed land use is based on several grounds, a trial court must uphold the denial so long as one of the cited grounds has merit. *Herr v. Lancaster County Planning Commission*, 155 Pa.Cmwlth. 379, 387, 625 A.2d 164, 168-69(1993).

With the order that the court enters today, the commission's decision is affirmed and the appellant's appeal is dismissed.